Filed 3/15/24  P. v. Knowles CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>RODERICK JAMES KNOWLES,<br><br>　　Defendant and Appellant. | A167792<br><br>(Solano County<br>Super. Ct. No. FC36622) |

Appellant Roderick James Knowles (appellant) appeals from the superior court's denial of his petition for resentencing under Penal Code section 1172.6.[1]  We affirm.

PROCEDURAL BACKGROUND

In March 1994, the Solano County District Attorney filed an information charging appellant with murder (§ 187) with allegations that he personally used a firearm (§ 12022.5) and that he committed the murder during the commission of a robbery or attempted robbery (§ 190.2, subd. (a)(17)).  A jury found appellant guilty of murder and found true the robbery-murder special circumstance, but the trial court declared a mistrial as to the firearm allegation because the jury was unable to reach a verdict.  The trial court sentenced appellant to life in prison without the possibility of parole.

---

[1] All undesignated statutory references are to the Penal Code.

1

In December 2019, appellant filed a section 1172.6 petition for resentencing.[2] In a brief filed in support of the petition, appellant argued he was entitled to an evidentiary hearing on the petition because the jury's failure to reach a verdict on the firearm enhancement meant that he was convicted on a felony-murder theory. In April 2021, the superior court concluded appellant made a prima facie showing of eligibility for relief, received further briefing, and conducted an evidentiary hearing at which appellant presented expert testimony. In April 2023, the court found that the prosecution had "proven beyond a reasonable doubt that [appellant] was a major participant in the robbery and acted with reckless disregard for human life." The court denied the petition, and the present appeal followed.

FACTUAL BACKGROUND[3]

On the evening of October 25, 1993, Matthew J. (the "victim") was fatally shot in Fairfield in the course of a robbery. The evidence showed that appellant planned the robbery and was present, but there was no eyewitness testimony whether it was appellant or an accomplice who shot the victim.

Prosecution Case

In October 1993, the victim and his wife S.J. lived in an apartment in Fairfield with their five-year-old son. The evening of October 25, S.J. saw appellant and another man outside her apartment complex, and she asked them if they knew where she could buy marijuana. Appellant said he would sell S.J. four ounces of marijuana for $225 and bring the marijuana to her

---

[2] The petition was actually filed under former section 1170.95, now section 1172.6. (Stats. 2022, ch. 58 (Assem. Bill No. 200 (2021–2022 Reg. Sess.)), § 10, eff. June 30, 2022.) For convenience and clarity, we refer to section 1172.6 in this decision, even if section 1170.95 was in effect at the time of the referenced portion of the record or authority.

[3] Appellant's October 11, 2023 request for judicial notice of the record from the appeal from his conviction (case number A068551) is granted.

apartment. About 20 minutes later, appellant returned accompanied by a different man, but the marijuana was an ounce short. Appellant said he would return in 20 minutes with the proper amount.

S.J. left to speak to a friend, leaving the victim in the apartment with the purchase money. Around 9:00 p.m., an eyewitness was working on a car in the parking lot for the victim's apartment complex when he saw two men in black clothing and a man in a white tank top "fighting." The man in the tank top ran away, and the two other men ran after him. A few seconds after the three men left the eyewitness' view, he "heard three shots." Later, after an ambulance arrived, the eyewitness saw the victim on the ground, wearing a tank top.

About 10-15 minutes after S.J. left her apartment, she and her friend walked back towards her and the victim's apartment. On the way, S.J. saw the victim lying on his back "in a bush." The victim was vomiting, so S.J. flipped him over onto his stomach, at which point she noticed that his "head was bleeding."

The first Fairfield police officer to arrive found the victim about 100 feet from his apartment "face down in some ivy" with a head wound and two wounds on his legs. The victim was "moaning a little bit."

The victim died eight days later. The cause of death was a gunshot wound to the head. The victim also suffered a gunshot wound to a thigh and to a leg.

A bullet hole was discovered in the victim's kitchen wall that was not there prior to the night of the robbery.

In November 1993, appellant was arrested in Texas and brought back to Fairfield and interrogated. Appellant's initial story was that he agreed to sell a woman four ounces of marijuana and ended up fighting with her

3

husband over a $10 bag. He denied knowledge of any murder. The police informed appellant that his accomplice, Cedrick B., had told them that they had gone to the apartment to commit a robbery, that it was appellant's idea, and that appellant had the gun and shot the victim.

After further back and forth, appellant changed his story and stated that somebody had a gun and he "took off running" and heard shots. Eventually he admitted planning the robbery with Cedrick B. and another man, and he admitted obtaining the gun, but he claimed they had "no intention of them shooting the dude at all." Appellant and Cedrick B. entered the victim's apartment; Cedrick B. had the gun. Cedrick B. pointed the gun at the victim, who pleaded, "Put the gun away." Appellant kicked the victim in the stomach, and Cedrick B. tried to fire the gun but nothing happened. Appellant tried to run out of the house, but the victim "grabbed" him. Cedrick B. pointed the gun to the victim's head and appellant said, "Don't shoot him in the head." Cedrick B. "shot the gun at the ground," allowing appellant to get out of the apartment. But appellant slipped and fell and the victim jumped on him. Cedrick B. came to appellant's aid, and they ran away in opposite directions. Appellant then "heard some shots," met up with Cedrick B., and disposed of the gun. After a pause in the recording—during which a detective said "If this guy was kicking your butt, you should have told us that"—appellant changed his story to say he took the gun from Cedrick B. and shot the victim after the victim tried to grab the gun.

Defense Case

Appellant testified that, on the night of the robbery, he agreed to sell 4 ounces of marijuana to a woman (S.J.) who lived in an adjoining apartment complex. He went home to obtain the marijuana, and he called his friend

4

"Man" and asked Man to bring him a gun for "protection" during the transaction.

Appellant asked Cedrick B. to accompany him during the drug sale. When they arrived at S.J.'s apartment, they discovered they had brought less than four ounces, so they left to retrieve the proper amount. They met up with Man, and Cedrick B. said "he was willing to rob" S.J. Appellant said he did not want to be part of the robbery, but he said the others could use his marijuana during the robbery. Man decided against it because there was not enough money to be made. By the time appellant, Cedrick B., and Man walked back to S.J.'s apartment, "it was understood that there wasn't going to be any robbery."

Man left, and appellant and Cedrick B. entered S.J.'s apartment. Appellant believed Man still had the gun, but, while appellant spoke to the victim, Cedrick B. pointed the gun at the victim's head. Appellant tried to run away, but the victim "grabbed" appellant. Cedrick B. fired the gun into the floor, and appellant ran out the front door. Appellant slipped and fell, and the victim resumed fighting with him. Cedrick B. helped appellant fight the victim, and appellant fled. Appellant did not see the victim again, but he heard two gunshots. When appellant and Cedrick B. met up shortly thereafter, Cedrick B. told appellant that he thought he had shot the victim in the leg. Appellant threw the gun on a roof, and two days later he flew to San Antonio (where he grew up) because he was "scared" after the shooting. He denied shooting the victim; he told the police he shot the victim after the police mentioned he "had a good chance of beating this case on self-defense."

Evidence in Support of Resentencing

At the evidentiary hearing on appellant's resentencing petition, appellant presented testimony from Dr. Rahn Minagawa, "an expert in

5

forensic psychology specifically relating to adolescent and juvenile brain development." Dr. Minagawa conducted "a comprehensive psychological evaluation and social developmental assessment on" appellant, who was 20 years old when he robbed the victim. The expert testified that "the male brain reach[es] maturity" around age 25. The "last part of the brain to fully develop," the "prefrontal cortex," "is associated with executive functioning, decision making, planning, understanding consequences." Prior to age 25, the male brain "can't exert as much control, especially during . . . emotionally charged situations or when other peers are present." Dr. Minagawa opined that appellant's brain was still developing at the time of the robbery, hampering his judgment, especially in the presence of peers. Dr. Minagawa also testified that appellant had described traumatic life experiences: he grew up in an abusive home, he had been the target of several attacks, and he had been shot at the age of 18 and ended up paralyzed for about a year. Dr. Minagawa opined that such experiences would impact a person's ability to "deliberate and to fully understand or comprehend their decisions." He explained, "[I]f you've been traumatized early on, parts of your brain become much more reactive to perceive[d] threats, much more reactive in emotionally charged situations."

Appellant also presented testimony from Dr. Richard Angelo Leo, a professor of law and psychology who testified as an expert in "social psychology and criminology, specifically in the practice of police interrogations, psychology coercion and making of false confessions." Dr. Leo testified about interrogation techniques police use to obtain incriminating statements from suspects and about the possibility of false confessions. Dr. Leo opined that appellant's assertion that the officers suggested a claim of

6

self-defense matched "a classic minimization technique in homicide interrogations."

DISCUSSION

Appellant contends the superior court erred in denying him resentencing relief under section 1172.6 based on the court's finding that he acted with reckless indifference to human life.  We conclude the court's finding is supported by substantial evidence.

<u>Legal Framework</u>

"Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) amended the felony-murder rule to provide: 'A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2 [the statute defining felony-murder special circumstances].' (§ 189, subd. (e).)  The new law was designed 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)"  (*People v. Oliver* (2023) 90 Cal.App.5th 466, 477 (*Oliver*).)

"The Legislature also added former section 1170.95 (now section 1172.6), which creates a procedure for offenders previously convicted under a felony-murder theory to obtain the benefits of these changes retroactively.

7

Under the statute, individuals convicted of murder can petition for relief in the court where they were sentenced if (1) the complaint or information filed against them 'allowed the prosecution to proceed under a theory of felony murder . . .,' (2) they were convicted of murder following a trial, and (3) they could not now be convicted of murder 'because of changes to [s]ection 188 or 189.' (Former § 1170.95, subd. (a); see now § 1172.6, subd. (a).) In most cases where the petitioner makes a prima facie showing that he or she is entitled to relief, the court must hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill 1437 (2017–2018 Reg. Sess.). (§ 1172.6, subd. (d)(3).)" (*Oliver*, *supra*, 90 Cal.App.5th at pp. 477–478.)

A superior court's determination whether the prosecution met its burden in a proceeding under section 1172.6 is reviewed for substantial evidence. (*Oliver*, *supra*, 90 Cal.App.5th at p. 480.) "We ' "examine the entire record in the light most favorable to the judgment to determine whether it contains . . . evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' " (*People v. Clements* (2022) 75 Cal.App.5th 276, 298; accord *Oliver*, at p. 480.) In the present case, the court found that appellant was a major participant in the robbery-murder of the victim and that he acted with reckless indifference to human life. On appeal, appellant does not dispute that substantial evidence supports the major participant finding but he argues insufficient evidence supports the reckless indifference finding.

In *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), the Supreme Court explained that reckless indifference to human life is " 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' " (*Id.* at

8

p. 616.)  It "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Id.* at p. 617.)  "Reckless indifference to human life has a subjective and an objective element. [Citation.]  As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.'  [Citations.]  As to the objective element, ' "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." ' " (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).)

"[T]he mere fact that a robbery involves a gun is insufficient on its own to establish reckless indifference to human life." (*Oliver*, *supra*, 90 Cal.App.5th at p. 478; see also *Clark*, *supra*, 63 Cal.4th at pp. 617–618.)  Instead, "*Clark* listed factors to consider when determining whether reckless indifference existed: 'Did the defendant use or know that a gun would be used during the felony?  How many weapons were ultimately used?  Was the defendant physically present at the crime?  Did he or she have the opportunity to restrain the crime or aid the victim?  What was the duration of the interaction between the perpetrators of the felony and the victims?  What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force?  What efforts did the defendant make to minimize the risks of violence during the felony?  [Citation.]  As with a major participant finding, ' "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient." ' " (*Oliver*, at

9

pp. 478–479; see also *Scoggins*, *supra*, 9 Cal.5th at p. 683 ["[d]etermining a defendant's culpability under [section 190.2, subdivision (d)] requires a fact-intensive individualized inquiry"].)

Analysis[4]

In finding that appellant showed reckless indifference to human life, the superior court first reiterated its finding that appellant arranged for the gun to be brought and knew that Cedrick B. was armed. The court also observed that appellant was present during the robbery and had "multiple opportunities to stop" it. "Even after the shots [appellant] had an opportunity to check on and assist [the victim] and especially after being told [Cedrick B.] might have shot [the victim] in the leg, but [appellant] did not do so." The court found that appellant was aware of the risk of violence before the fatal shooting because Cedrick B. fired a shot in the apartment. Finally, the superior court found that appellant's conduct was "not attributed to immaturity[,] impetuosity[,] or failure to appreciate the risk and consequences" of his actions. When appellant planned the robbery, there was "no evidence that [he was] being pressured." He was the one who planned the robbery and sought a gun, and he "fully unders[tood] the violent risk" involved.

At the outset, we note that the fact that appellant "was a major participant in the underlying felony is—itself—supportive of the . . . factual finding that [he] acted with reckless indifference to human life." (*People v. Cody* (2023) 92 Cal.App.5th 87, 113; see also *Clark*, *supra*, 63 Cal.4th at p. 615 ["The greater the defendant's participation in the felony murder, the

---

[4] Because the superior court did not find beyond a reasonable doubt that appellant was the shooter, this court's analysis assumes Cedrick B. was the shooter.

more likely that he acted with reckless indifference to human life"].) In the present case, in concluding that appellant was a major participant, the superior court observed that appellant was the "instigator" and planner of the robbery, arranged for the firearm to be present because he knew the inherent danger of the drug deal, was present at the robbery, and disposed of the gun after the shooting. The court reasonably inferred from appellant's statements in the police interrogation that Cedrick B. was his backup. Those facts that demonstrate appellant's leading role in planning and executing the robbery offer " 'significant support' " for the court's reckless indifference finding. (*Clark*, at p. 615.)

Further, several of the factors identified in *Clark* as supporting a reckless indifference finding are present here. Appellant knew Cedrick B. was armed and appellant was responsible for arranging for the gun to be brought to the robbery. (*Clark*, *supra*, 63 Cal.4th at pp. 618–619; cf. *Scoggins*, *supra*, 9 Cal.5th at p. 677 [the defendant "did not use a gun, nor did he know that a gun would be used during the felony"]; *People v. Keel* (2022) 84 Cal.App.5th 546, 559 (*Keel*) ["there was no evidence that [the defendant] provided [the shooter] with his firearm"]; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 988 (*Ramirez*) ["it was [the shooter] who instigated and planned the carjacking, provided the gun, and fired it"].) Appellant was present during the robbery, the subsequent struggle, and (according to the eyewitness) the pursuit of the victim that resulted in the shooting. (*Clark*, at p. 619; see also *People v. Mitchell* (2022) 81 Cal.App.5th 575, 592 (*Mitchell*) [the defendant "was physically present at every stage of the crime: planning, execution, dividing the spoils, and flight"].) The evidence supported an inference appellant was the leader, but he failed to "act as a restraining influence." (*Clark*, at p. 619.) Most significantly, he pursued the victim

11

rather than directing Cedrick B. to allow the victim to escape. (Cf. *Scoggins*, at p. 678 [the defendant "was not physically present at the crime scene and was not in a position to restrain [the shooter] once the meeting with [the victim] began"]; *Ramirez*, *supra*, 71 Cal.App.5th at p. 989 [the defendant " 'was not "close enough to exercise a restraining effect on the crime" or [the shooter]' "]; *In re Taylor* (2019) 34 Cal.App.5th 543, 559 (*Taylor*) [the defendant "never got out of the car and had no opportunity to prevent the shooting" and "could not even see" the interaction between the shooter and the victim].)[5] Finally, appellant "fail[ed] to provide aid" to the victim, even though he admitted Cedrick B. told him the victim had been shot. (*Clark*, at p. 619; see also *People v. Williams* (2020) 57 Cal.App.5th 652, 664 [the defendant "did not call for assistance or attempt to render aid to the victim who did not die at the scene of the shooting"]; cf. *Ramirez*, *supra*, 71 Cal.App.5th at p. 989 ["There is no evidence [the defendant] had an opportunity to help [the victim] . . . or that [the defendant] knew [the victim] had been wounded by the gunfire."].) Appellant made no effort to ensure that the victim would receive medical attention. (Cf. *Scoggins*, at p. 680 [the defendant walked over to see if the victim was still breathing and other bystanders had already called the police].)[6]

---

[5] Appellant suggests he acted as a restraining influence because he claimed in his police interrogation that he told Cedrick B. not to shoot the victim in the head. But he did not so testify at trial and the superior court was free to disbelieve that self-serving assertion, especially given his numerous lies during the interrogation. In any event, appellant does not claim he told Cedrick B. not to shoot at all, and he did not prevent the pursuit of the victim.

[6] These specific considerations distinguish the present case from those in which there is nothing "that one can point to that elevated risk to human life beyond those risks inherent in any armed robbery." (*Clark*, *supra*, 63 Cal.4th at p. 623; accord *Ramirez*, *supra*, 71 Cal.App.5th at p. 987.) In

Appellant emphasizes there is no evidence he had any prior knowledge of Cedrick B.'s propensity for violence. (See *Taylor*, *supra*, 34 Cal.App.5th at p. 558 [no "evidence that [the shooter] had killed before or that [the defendant] was aware of previous violent behavior on [the shooter's] part"].) We agree there is no evidence appellant knew of Cedrick B.'s propensity for violence *before* the robbery, but, as the superior court pointed out, appellant *did* become aware of Cedrick B.'s propensity when Cedrick B. fired the gun inside the victim's apartment. As we have observed previously, appellant could have tried to stop any subsequent pursuit of the victim, so, when he failed to do so, it was with knowledge that Cedrick B. very well might shoot again. Therefore, this factor does offer *some* support for the superior court's reckless indifference finding.[7]

Finally, appellant argues the evidence of his "age, brain development, background of dysfunction and trauma and evidence about how such factors may impact[] an adolescent's ability to appreciate the risks or consequences in criminal conduct" undermined the reckless indifference finding. But appellant concedes "the evidence of the plan to commit a robbery with a firearm did not appear to be impulsive or due to any peer pressure." (See *Oliver*, *supra*, 90 Cal.App.5th at p. 489; cf. *Keel*, *supra*, 84 Cal.App.5th at p. 562 [15-year-old defendant "would have felt pressure to 'hit the block' and go along with the robbery instigated by" the shooter, where the robbery was not planned in advance]; *Ramirez*, *supra*, 71 Cal.App.5th at p. 991 [15-year-

---

other words, this was not "[a] robbery in which the only factor supporting reckless indifference to human life [was] the fact of the use of a gun . . . ." (*Clark*, at p. 617, fn. 74.)

[7] Other factors mentioned by the Supreme Court in *Clark*, such as the duration of the offense, are not significant in the present case, as either supporting or undermining the reckless indifference finding. (*Clark*, *supra*, 63 Cal.4th at pp. 620–622.)

old defendant " 'was afraid that if he did not help [the shooter], the neighborhood would find out and someone might kill him later' "].) And, although appellant's actions *during* the robbery might have been impacted by his impulsivity, that does not *negate* the relevance of his failure to act as a restraining influence and failure to render aid to the victim. (See *Oliver*, at p. 490 [the defendant's actions "did not show 'a transient rashness' or 'inability to assess consequences' "]; see also *Mitchell*, *supra*, 81 Cal.App.5th at p. 595 ["Youth can distort risk calculations. Yet every 18 year old understands bullet wounds require attention. The fact of youth cannot overwhelm all other factors."]; accord *Oliver*, at p. 489.)

Given appellant's leading role in planning the armed robbery, his physical presence throughout, his pursuit of the victim, and his failure to render any kind of aid after the shooting, we conclude substantial evidence supports the trial court's finding that appellant acted with reckless indifference to human life.

## DISPOSITION

The superior court's order is affirmed.

                                            SIMONS, J.

We concur.


JACKSON, P. J.
CHOU, J.



(A167792)


14